**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

| | |
|---|---|
| **District Court, Denver County, Colorado**<br>901 19th Street<br>Denver, CO 80294 | **DEC 17 2018**<br>JEFFREY P. COLWELL<br>CLERK |
| **Plaintiff(s):** Matthew Buck ,<br>v.<br>**Defendant(s):** Bora Song<br>and Hye Song. | ▲ COURT USE ONLY ▲ |
| **Attorney or Party Without Attorney :**<br>Bora Song, pro se for Defendants<br>[address redacted]<br>Phone Number: [phone number redacted]<br>E-mail:  borasong@live.com | **Case Number:**<br>No. 18-cv-02427 RBJ |
| **DEFENDANTS' MOTION TO DISMISS, MOTION TO REDACT and MOTION FOR SANCTION** | |

## I.  MOTION TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION

Pursuant to F.R.E. 12(b)(2) (or C.R.C.P. 12(b)(2)), Defendants Bora Song and Hye Song (together "Defendants"), as pro se, hereby submit this Motion to Dismiss, Motion to Redact and Motion for Sanction and respectfully request that this Court dismiss the lawsuit filed on December 6, 2018 for lack of personal jurisdiction over the Defendants, and state to this Court as follows:

### FACTUAL AND PROCEDURAL BACKGROUND

On or about December 6, 2018, the Plaintiff Matthew Buck filed its Complaint in this Court as John Doe (amended on December 12, 2018 as Plaintiff "Matthew Buck,") naming two Defendants as parties to its action and claiming that venue is proper in the District Court of Colorado and asserts that jurisdiction is proper in this Court. The Plaintiff asserted two claims for relief: defamation per se and harassment.

Plaintiff's complaint contains the following jurisdictional allegations, which is accept as true for the purpose of C.R.C.P. 12(b)(2) motion:

1) Plaintiff, plaintiff's wife, wife's co-worker are residents of Colorado.
2) Both Defendants are residents of California.
3) The alleged defamatory statements were stated on "@WilliamWilma2" on Twitter.com.
4) The attached statements on Twitter.com, through @WilliamWilma2 account, do not indicate any reference to Colorado or residents of Colorado.

1

5) "Defendants are subject to personal jurisdiction in this Court through the Colorado long-arm statute because they have committed tortious acts within Colorado."

6) No other specified Colorado residents has been named, identified or stated.

7) Plaintiff asserts that Defendants caused him damages in the amount of $75,000 or greater in Colorado.

8) Plaintiff asserts that he identified the Defendants using IP and phone number.

9) Plaintiff's wife is identified as "@clairibela" on Twitter, which is owned by a user named "Claire Buck" with the location as "Denver, Colorado."

10) Plaintiff's wife's coworker is identified as "@LonlyStrbuxLovr," which is owned by a user named "Jessica W." and the location is not identified.

11) An unidentified user as "@errorcoramnobis" is also included in the published message, which is owned by a user named "Error Coram Nah, B." in "Burnin Zana, Wakanda."

12) Plaintiff has his own law firm in Denver, Colorado, where he received an online message through the law office's website, to which he suspects it was from one or both of the Defendants.

13) On September 20 and 21 of 2018, either one or both Defendants used an account "@Williamwilma2" on Twitter.com where Defendants "intentionally and purposefully sent harassing and defamatory tweets and messages...to residents of the forum state of this court."

14) The alleged defamatory tweets contain statements regarding Claire Buck's husband, Matthew Buck or Plaintiff "John Doe," that he "would rape or has already raped his own young daughters, as well as the wife's co-worker's daughter."

15) Plaintiff Matthew Buck, as "John Doe," asserts he has never communicated with the Defendants using Twitter.

16) As of December 12, 2018, the Court denied Plaintiff to resume as "John Doe" and Plaintiff amended his complaint to state his true and correct name, Matthew Buck.

Based on the screenshots of the messages identified on Plaintiff's complaint, the statements from Twitter.com shows the alleged defamatory statements being notified to three users. One of the users was identified as "Claire Buck" and the Twitter account holder uses the e-mail "ccyrnak@vt.edu." The user has been revealed as Claire Adrienne Buck or Claire Adrienne Cyrnak, who is the Plaintiff's wife that received the alleged defamatory statements about her husband, Matthew William Buck. Plaintiff Matthew Buck, bringing the lawsuit as "John Doe," is revealed as a Colorado licensed attorney (License #44170) at "Red Law LLC" in Denver, Colorado. The Plaintiff will be referred to as "Plaintiff," "Matthew Buck," "Attorney," and "Plaintiff's attorney" throughout this Motion.

## ANALYSIS

### Lack of Personal Jurisdiction

The Court is authorized to dismiss claims against a party pursuant to Rule 12(b) when the court lacks jurisdiction over the persons. C.R.C.P. 12(b)(2). Pursuant to Rule 12(b), no defense

or objection is waived by submitting motion to dismiss permitted under Rule 12.

## 1. Personal Jurisdiction Standard

The Court is authorized to dismiss claims against a party pursuant to Rule 12(b) when the court lacks jurisdiction over the person. C.R.C.P. 12(b)(2). The General Assembly, in enacting Colorado's long-arm statute, Colo. Rev. Stat. § 13-1 - 124, intended to extend the jurisdiction of the courts to the fullest extent permitted by the United States Constitution and the Colorado Constitution. *Keefe v. Kirschenboum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002). Nevertheless, the plaintiff has the burden of pleading in its complaint sufficient facts to support a reasonable inference that a non-resident defendant has engaged in conduct under the long-arm statute that subjects the non-resident to in personam jurisdiction. *Id.* at 1272; *McAvov v. District Court*, 757 P.2d 633,634 (Colo. 1988). A plaintiff must carry this burden by making a prima facie, threshold showing of personal jurisdiction. *Keefe*, 40 P.3d at 1272; *McAvoy*, 757 P.2d at 634.

Before a nonresident defendant may be subjected to a Colorado court's jurisdiction, the plaintiff must comply with the requirements of Colorado's long-arm statute, section 13-1-124, C.R.S. 2013, and constitutional due process. See *Gognat v. Ellsworth*, 224 P.3d 1039, 1052-53 (Colo. App. 2009), aff'd, 259 P.3d 497 (Colo. 2011). Colorado's long-arm statute confers the maximum jurisdiction permitted by the Due Process Clauses of the United States and Colorado Constitutions; therefore, if a plaintiff satisfies the constitutional requirements, Colorado's long-arm requirements are also satisfied.

To meet the requirements of due process, a defendant must have "certain minimum contacts with the forum state so that he may foresee being answerable in court there." *Id.* at 1194; see *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ("Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The quantity and nature of these contacts depend on whether the plaintiff alleges general or specific jurisdiction. *Goettman*, 176 P.3d at 67. A court has general jurisdiction if the defendant conducted continuous and systematic activities that are of a general business nature in the forum state. *Id.* A court has specific jurisdiction if the "injuries triggering litigation arise out of and are related to activities that are significant and purposefully directed by the defendant at residents of the forum." *Archangel*, 123 P.3d at 1194 (internal quotation marks omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit- related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. ___, ___, 134 S. Ct. 1115, 1121 (2014).

Plaintiff asserts specific jurisdiction and did not allege that either Defendants conducted continuous and systematic activities of a general business nature in Colorado, so **only the issue of specific jurisdiction over the Defendants is discussed.**

3

## THIS COURT MAY NOT EXERCISE SPECIFIC JURISDICTION OVER DEFENDANTS

In properly viewing the focus of the minimum contacts analysis on the fact that it is the defendants, not plaintiffs or third parties, who must create contacts with the forum state, the court should review the jurisdictional allegations presented by Plaintiff.

Specific jurisdiction exists when the cause of action arises out of certain forum-related acts by the non-resident defendant; thus, the litigation must result from alleged injuries that "arise out of or relate to" activities that are significant and purposefully directed by the defendant at residents of the forum. *Burger King*, 471 U.S. at 472; *Keefe*, 40 P.3d at 1271; *Le Manufacture Francaise Des Pneumatiques Michelin v. District Court*, 620 P.2d 1040 (Colo. 1980). The non-resident defendant must have purposefully availed himself of the privilege of conducting activities within another state. *Keefe*, 40 P.3d at 1271. The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random or fortuitous contacts or the unilateral activity of a third party. *Burger King*, 471 U.S. at 475; *Keefe*, 40 P.3d at 1271. For jurisdiction to be proper, the contacts must proximately result from actions of the defendant that create a "substantial connection" with the forum state. *Burger King*, 471 U.S. at 475; *Keefe*, 40 P.3d at 1271.

### 1. DEFENDANTS LACK SUFFICIENT MINIMUM CONTACTS WITH COLORADO

Plaintiff has not made, and cannot make, the prima facie showing necessary to allow this Court to exercise authority over either of the defendants in this case. Plaintiff asserts that personal jurisdiction over the nonresident Defendants is appropriate under Colorado's long-arm statute, C.R.S. § 13-1-124, because Defendants allegedly sent Tweets or message to or about Plaintiff to his wife and his wife's co-worker.

The Defendants assert the following:

1) Defendants have never visited Colorado and do not have any property or any relation with anyone in Colorado.
2) Defendants do not have business, office, contracts or other activities in the forum or towards the residents in the forum.
3) Defendants did not avail themselves of the benefit of Colorado law.
4) The alleged defamatory statements on Twitter.com was not specifically directed to Colorado residents as a whole or knowingly sought residents of Colorado.
5) The alleged Twitter statements on "@WilliamWilma2" shows one-sided tagging of the Plaintiff's wife, which were directed toward users from unknown locations.
6) The readership and views of Twitter.com, where the alleged defamatory statements were posted, could be viewed anywhere in the country.
7) Plaintiff does not identify the "hundreds of people" who viewed the alleged defamatory statements and Plaintiff does not assert that these people are Colorado residents.
8) Defendants have never met the Plaintiff or his wife. Defendants do not have any relation to Plaintiff or his wife in any personal or professional setting.

4

9) Defendants have not engaged with, interacted with or conversated with Plaintiff, Plaintiff's wife or Plaintiff's wife's co-worker through Twitter account "@WilliamWilma2." For this purpose, engaging and interacting and conversating are exchange of messages between two or more parties.

Since the Defendants' contacts were isolated for this particular alleged defamatory statements, the Court should find that the alleged contacts were insufficient to warrant exercising specific personal jurisdiction over the Defendants. Defendants have not purposefully availed itself of the privilege of acting within the forum state. Defendants could not have reasonably anticipated that they would be subject to personal jurisdiction in this Court because they did not make any contact with anyone in Colorado for business or otherwise.

### a)   Analysis of Alternative Minimum Contact:  Walden Test

Under *Walden v. Fiore*, 571 U.S. __, 134 S. Ct. 1115 (2014), Plaintiff's reliance on their own Colorado connections is misguided; the fact that Plaintiff and his wife are Colorado residents is only material to determining whether defendants created other contacts with the state. 134 S. Ct. at 1123 ("To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Thus, Plaintiff's allegations that the Defendants "have committed tortious acts within Colorado" and "have intentionally and purposefully sent harassing and defamatory tweets and messages via the internet to residents of the forum state of this court" are insufficient to establish minimum contacts by defendants.

In *Walden*, the Supreme Court held that the defendant's knowledge that the plaintiffs were residents of the forum and would feel harm in the forum was **insufficient forum contact** for personal jurisdiction. *Id.* at 1124-26. The same is true here. See, e.g., *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, ___ F.3d ___, ___, No. 13-4112, 2014 WL 1778048, at *2 (10th Cir. May 6, 2014) (no personal jurisdiction over the defendant because the plaintiff's "reliance on its own [forum state] connections is misguided" and insufficient for personal jurisdiction).

Further, Plaintiff did not allege that the statements made by Defendants were specifically directed at Colorado. Rather, as Plaintiff alleges, the statements were made on the Internet and distributed "to hundreds." Plaintiff's allegations that the statements caused damage to reputation in his home state of Colorado is insufficient to establish specific personal jurisdiction because "mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact **with the forum State**." *Walden*, 134 S. Ct. at 1125. While Plaintiff contends that Defendants' alleged defamatory statements have been "seen by hundreds of people," Plaintiff failed to identify the readers of the statements or to allege where these individuals reside. Coincidental communication amongst users on social media via tagging or general messages to public does not show purposeful engagement or targeted interaction for the purposes of specific jurisdiction. Such bare allegations and assumptions do not assist Plaintiff in proving personal jurisdiction over the out-of-state Defendants.

Similarly, Plaintiff's allegations regarding the Defendants' creation of Tweets that "identify Plaintiff by his legal name and Twitter username, as well as Twitter accounts which belong to his wife and his wife's co-worker" do not focus on Colorado and do not provide sufficient minimum contacts to subject defendants to personal jurisdiction in Colorado. *Id.* at 1121 ("defendant's suit-related conduct must create a substantial connection with the forum State"); compare *Wagner v. Miskin*, 660 N.W.2d 593, 599 (N.D. 2003) (creation of website www.undnews.com subjected the defendant to personal jurisdiction in North Dakota because it was directed **at residents of North Dakota**), with *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, ___ F.3d ___, ___, No. 13-3005, 2014 WL 1849269, at *5-*6 (7th Cir. May 9, 2014) (no personal jurisdiction because "the operation of an interactive website does not show that the defendant has formed a contact with the forum state" and "[t]he connection between the place where an email is opened and a lawsuit is entirely fortuitous"); *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) (holding Texas plaintiff **could not establish personal jurisdiction over nonresident defendants who posted an article about the plaintiff on the Internet because the article did not refer to Texas and was not specifically directed at Texas readers**); *Telemedicine Solutions LLC v. WoundRight Techs., LLC*, ___ F. Supp. 2d ___, ___, No. 13 CV 3431, 2014 WL 1020936, at *11 (N.D. Ill. Mar. 14, 2014) (court lacked personal jurisdiction over a defendant who posted allegedly defamatory statements in a Google ad and used an allegedly infringing trademark because "[n]one of Defendant's alleged contacts — its website, Facebook page, Twitter feed, and conference-based marketing efforts — was targeted or aimed at Illinois, or prompted any more than happenstance interactions with Illinois residents or businesses"). Unlike media companies or businesses, private individuals who post on a social media platform do not foresee the effects and influence of their statements to a specific state. Plaintiff fails to draw a causal connection between the alleged defamatory statements that were posted for the general public to be a contact with the forum state. Without Defendants' connection to the forum state, this Court cannot exercise specific jurisdiction over the Defendants.

As such, the analysis of the Walden Test shows that Plaintiff, who must establish a prima facie showing here, have not alleged facts showing any contacts that the out-of-state defendants themselves created with Colorado. *Walden*, 571 U.S. at ___, 134 S. Ct. at 1122 (the relationship between the defendant and the forum "must arise out of contacts that the 'defendant himself' creates with the forum" (quoting *Burger King*, 471 U.S. at 475)), and have failed to establish personal jurisdiction over the out-of-state defendants. This Walden Test weighs in favor of the Defendants because it does not show that there were sufficient contact with the Defendants to the forum state.

### b) Analysis of Alternative Minimum Contact:  Calder Test

The Calder effects test focuses on harm caused by the defendant. In order for a defendant to be subject to personal jurisdiction under *Calder*, a defendant must (1) commit an intentional act (2) that is "expressly aimed" at the forum state and (3) causes actual harm that the defendant knows is likely to be suffered in the forum state. *Calder v. Jones*, 465 U.S. 783 (1984).

First, Defendants for this alleged defamatory statement does not show intentional act to engage with the forum state or its residents. Plaintiff asserts that Defendants tagged the accounts of his wife and his wife's co-worker on Twitter.com intentionally. Defendants, having never met Plaintiff's wife or the wife's co-worker, do not have personal or general knowledge of their location and residency. Based on Plaintiff's allegations, messages that were written in public

view on a personal social media account and the tagging of someone in a particular state constitutes minimal contact. However, social media such as Twitter has automatic tagging that attaches people when the user does not intend on speaking to or engaging with.

Second, the Plaintiff attached three examples of the alleged defamatory statements on Twitter where the two conversations are directed to people whose location is not clear or unknown and where the other statement is not directed to anyone in particular. There is no significant link to Defendants' actions to their knowledge of intentionally contacting residents of Colorado. Therefore, Plaintiff cannot show that Defendants were "expressly aiming" their statements to residents of Colorado or to the forum state. Plaintiff did not show by prima facie that Defendants have an interest in directing their ideas to residents of Colorado or to create an effect in Colorado. Unlike a media company or a magazine company, where they distribute materials intentionally and knowingly to the residents of a particular state, private individuals who writes on their own social media account do not write with the knowledge that their personal accounts will be read by hundreds in a specific state. Plaintiff's allegations are not supported by his own evidence of the Twitter posts. Unlike *Calder*, where the defendants' actions were "expressly aimed" at the forum state and were "calculated to cause injury to the plaintiff" in the forum state, the alleged Twitter statements do not mention the forum state and Plaintiff Matthew Buck fails to state Defendant Songs' calculative and intentional actions in specifically aiming at the forum state. The attached Twitter statement shows Defendants were allegedly speaking to multiple people, where the alleged Plaintiff's wife's co-worker does not show the location and the other unidentified user's location shows "Burnin Zana, Wakanda." [465 U.S. at 789, 790]. The allegation that Defendants were purposefully targeting Colorado and its residents is an assumption that has not been alleged with particularity. Merely issuing a statement published to the entire world is not enough.

Third, because the first two prongs are not met, Plaintiff fails to show that Defendants acted with knowledge that their actions would cause actual harm to be suffered in the forum state. There are no indications of Colorado, Plaintiff's business or indication of speaking about Plaintiff's whereabouts. The claim does not link the Defendants' knowledge and intentional action to the coincidental tagging of Plaintiff's wife in the conversation between the Defendants' alleged Twitter account and the two users. The cyberspace and the social media platform are widespread and too broad to identify the locations of each and every user's location. Unless the Plaintiff can show that Defendants had knowledge of the actual person behind each user, his claim that Defendants acted knowingly would be meritless and based on assumptions.

Critical to the personal jurisdiction analysis in this case is the glaring fact that none of the Defendants is a Colorado resident. Further, there is no connection or explanation of the causal effect of the alleged defamatory statement that Colorado or its residents were impacted in a way justifying this Court's exercise of jurisdiction over Defendants. The alleged defamatory messages were sent in a course of two days, which would not make it foreseeable that Defendants would be haled into a Colorado court and the contact would be considered "random or fortuitous contacts or the unilateral activity of a third party." Because of the nature of the Twitter social media platform, where users engage with others who do not have any personal connection or relationship, it would be unrealistic to expect to litigate with every person a user interacts with. *Keefe*, 40 P.3d at 1270-71. Defendants' attenuated and fortuitous singular contact with a resident in Colorado fails to raise an inference of specific jurisdiction over either Defendants. Having failed to allege facts sufficient to establish the Defendants have the requisite

7

minimum contacts with Colorado, this Court lacks authority to exercise personal jurisdiction over the Defendants.

Based on the minimum contacts analysis for *Walden* and *Calder*, Plaintiff fails to show that Defendants made knowing and intentional contact in his claim. The coincidence of tagging or directing one or more messages to a person residing in Colorado is too weak for this Court to have jurisdiction over Defendants.

## 2) EXERCISING PERSONAL JURISDICTION OVER THE DEFENDANTS WOULD OFFEND NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

Even if this Court finds that there was minimum contact, the Court must also find that having jurisdiction over Defendants does not offend 'traditional notions of fair play and substantial justice' (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940).

The Supreme Court set out five factors in *Burger King* for determining fair play and substantial justice: (1) the burden imposed on the defendant, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) and the shared interest of the several states in furthering fundamental substantive social policies. See 471 U.S. at 476–77; see also *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

### 1)   The burden on Defendants of litigating in Colorado is significant.

"This factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." *OMI* Holdings, 149 F.3d at 1096. The burden on Defendants is significant. Both defendants have jobs in CA that will cause undue hardship on leaving their home state for the litigation in Colorado. Neither Defendant conducts business in Colorado. The burden on seeking and retaining a Colorado attorney for this particular matter would cause delay and hardship in time and finance. Without being able to regularly meet with an attorney in Colorado, the Defendants would be at a significant disadvantage. Overall, the burden is grave because the defendants did not engage with residents of Colorado to expect to be haled into court in this forum state.

The plaintiff cannot sue in a state simply because they reside there. In a situation where defendants posted allegedly defamatory material but had no ability to control whether the content was viewed in Colorado or elsewhere, it would be consistent with purposeful availment for the appropriate forum to be defendants' residence. Plaintiffs should not have complete choice of forum, especially in a claim that arise from cyberspace.

### 2)   Colorado has no interest in litigating this dispute.

Colorado does not have specific laws regarding defamation and the courts in Colorado did not adopt retraction suit or anti-slapp suit. The law of the forum state would not apply and this Court would have to look at other courts to fit the case into other state laws. It would be harder for this Court to hear a defamation case that arise amongst two private individuals over one specific matter without specific laws. This case will cause delays with other cases in the Court and thus, this case would not be beneficial overall for the judicial system in Colorado. The forum

state would not benefit from hearing this case. This factor weighs against Colorado jurisdiction.

### 3) Plaintiff's interest in obtaining relief can be obtained in a different forum.

Plaintiff is an attorney in Colorado. As he is representing himself in this lawsuit, he is fully capable of litigating this claim at any court. He would not face financial hardship throughout the litigation process because he would have limited number of people needed for this case. There are no known witnesses or experts to be present for this particular litigation. Plaintiff does not have to seek counsel in a different state. Plaintiff will be able to obtain effective relief in other states apart from this forum state.

### 4) Colorado is an inefficient place to litigate this dispute.

Another factor courts can consider in the fair play analysis is the interstate judicial system's interest in efficient resolution of controversies. As stated above, this forum state does not have specific law regarding cyberspace defamatory acts amongst private individuals. Other facts, as stated above, applies here as well. There are no known witnesses or the need for this forum state's substantive law. On the other hand, California courts have numerous cases and laws related to cyberspace defamation. Plaintiff's alleged claims could be resolved in Defendants' home state where the law is more precise and clearer in California. Unlike Colorado, California has precise laws for the regulation of defamation and the procedure in filing a lawsuit for defamation. All of these factors support jurisdiction in California.

### 5) Other states have shared interests in social policies.

Allowing Colorado to have jurisdiction in this case gives Colorado an incentive to be inefficiently pro-plaintiff, because Colorado's citizens get all the benefits from its law. The social media website is accessible by all states and cannot be blocked in Colorado. If the Court grants in personam jurisdiction over the out-of-state defendants, the jurisdiction would solely be based on negative effects since the constitutional requirements of personal jurisdiction weighs in favor of the defendants. The focus on the effects of the damage to plaintiff is not proper, even if those negative effects were intended.

In sum, the "fair play and substantial justice" analysis weighs heavily against jurisdiction by a Colorado court, particularly since the nonresident Defendants' ties to Colorado are nonexistent. This Court must "look to the geographic focus of the [posting], not the bite of the defamation, the blackness of the calumny, or who provoked the fight." *Revell*, 317 F.3d at 475. The factors from *Burger King* weigh in favor of the Defendants. Thus, the exercise of personal jurisdiction over the Defendants would offend the traditional notions of fair play and substantial justice.

### THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS; THUS, THIS COURT SHOULD DISMISS THIS CASE IN ITS ENTIRETY.

The Court should find that there is no minimum contact sufficient for the analysis and it would not be fair and just to bring the Defendants into this Court. Nothing in Plaintiff's

complaint demonstrates Defendants' knowledge or intention of directing alleged statements to people of Colorado or that Defendants wanted the statements to reach people in this state to impact Plaintiff's life and livelihood. Therefore, this Court should dismiss the entire case for lack of personal jurisdiction on Defendants.

## II. MOTION TO REDACT SENSITIVE INFORMATION

The address, IP address, phone numbers, phone account numbers and other related sensitive personal information of both Defendants have been published throughout the Complaint and prior documents for this case. Plaintiff's conduct constitutes a reckless disregard for the privacy rights and security interests of Defendants. Defendants are moving the Court to purge or redact the Court's own records of sensitive information (see: subpoena of Defendants' information on the Sprint phone billing account and information about Defendants' work history, personal address, phone numbers, IP addresses on Plaintiff's Complaint). The Defendants do not have an office address for the purpose of this litigation and their personal home address should be redacted on all court filings. Plaintiff acted with knowledge and intention to reveal Defendants' information and thus, should be order to resubmit a redacted version of each document.

### LEGAL AUTHORITY FOR MOTION TO REDACT

"Motions to redact are governed by GR 15. The court may order redaction if it "makes and enters written findings that the specific sealing or redaction is justified by identified compelling privacy or safety concerns that outweigh the public interest in access to the court record." GR 15(c)(2). A sufficient privacy concern exists where "[t]he redaction includes only restricted personal identifiers contained in the court record." GR 15(c)(2)(E). Motions to redact are treated as motions to seal according to court rule. GR 15(b)(4). "When a court record is redacted pursuant to a court order, the original court record shall be replaced in the public court file by the redacted copy. The original unredacted court record shall be sealed following the procedures set forth in [GR 15](c)(5)." GR 15(c)(6).

### ANALYSIS

Under FRE Rule 5.2, Plaintiff is required to redact any information that is covered and also personal information not covered by the redaction requirement. Plaintiff presented documents that exposes the Defendants' personal identifying information that could cause identity theft. Plaintiff had intentionally or recklessly exposed Defendants' personal information in public documents, creating a risk of security issues for the Defendants. Information such as employment history, personal account numbers, sensitive security information, home address should be properly redacted. Plaintiff served the Defendants in their home address and did not properly redact the address, intentionally or recklessly.

### REQUESTED RELIEF

1. Order the Clerk of the Court to purge or to redact the record of Defendants' sensitive personal information such as the Defendants' phone numbers, address, phone billing account number, IP address, and other numbers identifying Defendants' personal information.

2. If not redacted by Court, the Court should order Plaintiff to promptly resubmit and refile the documents with the Defendants' personal identifying information fully redacted.
3. The Court to impose other sanctions upon Plaintiff or take measures as the Court sees fit to insure Defendants' privacy rights will not be further violated.

### III. MOTION FOR SANCTIONS

Pursuant to Rule 11, Defendants move this Court to sanction Plaintiff's attorney for filing claim with two identities, requesting attorney fees, and causing undue hardship in filing the meritless lawsuit against Defendants. The identity of Plaintiff John Doe and Plaintiff's attorney is the same person. Plaintiff John Doe (renamed in amended complaint as "Matthew Buck") will be referred to as "Plaintiff," "Plaintiff's Attorney," "Attorney," "Matthew Buck," "Plaintiff Buck," "Attorney Buck," throughout this Motion.

### VIOLATIONS

Sanctions, including attorney fees, are an important mechanism available to our courts to prohibit and deter improper litigation conduct. *Aurora v. Colorado State Engineer*, 105 P. 34 595 (Colo. 2005). A "claim" is defined inter alia as "a demand for money or property to which one asserts a right." *BLACK'S LAW DICTIONARY* (29 Pocket ed.). Clearly, an allegation of "greater than $75,000, exclusive of interest and costs" in unidentified and unquantifiable reputational damage is a "claim", at least as that term is generally defined and understood. Attorney has provided little or no credible evidence of his alleged economic damages. It is not enough to show that the claim is "defamatory per se" without introducing evidence or analysis of how one or more of the alleged defamatory statement was either accusatory of criminal conduct, indications of loathsome disease, indications of unchastity, or improper conduct of business, trade or profession. None of the allegations have supporting analysis, but rather conclusory in the finding that Attorney believes the alleged statements qualify as defamatory per se. Attorney did not establish a link between the identification of the phone number to the identity of the phone number's owner. Attorney alleged false statements that were conclusory and unable to ascertain based on the Complaint. Attorney should have presented credible evidence of the causal nexus between the Defendants and the phone number, the Defendants and the "personal twitter account," and the Attorney's loss and Defendants' conduct. Attorney presented amounts to little more "than a hunch."

Additionally, C.R.S. § 13-17-102 specifically contemplates a circumstance, such as here, where only part of an action or claim - or even one aspect of a claim - may warrant sanctions. CR.S. §13-17-102 specifically provides that sanctions may be awarded if the party "brought or defended the action, or any part thereof, that lacked substantial justification..." Here, Attorney asserts harassment without any evidential finding or support other than anonymous message he received through his work website. Claims that lack basis and substantial justification cause undue hardship on defendants and causes delay in justice for important matters. During an attempted discussion of the case, Attorney wanted to cause undue burden and hardship by delaying the discussion, refusing to speak without Defendants' attorney. Defendants clearly told Attorney that Defendants were representing themselves, and attorney would not engage in a discussion about the case. The claims were presented for an improper purpose and reasonable inquiry was not made into the factual and legal contentions made.

Moreover, Plaintiff's "attorney" was misrepresenting himself as "Plaintiff John Doe" and is not litigating in good faith. Attorney in this matter is the same person as the Plaintiff, and he requested this Court to order Defendants to pay "John Doe costs and applicable attorney's fees" while he is representing himself. By hiding the Plaintiff's identity and asserting claims that needed to reveal the Plaintiff's identity for further investigation, Plaintiff was showing abusive process against non-attorney pro se Defendants. While with court permission a party can protect identity from the public, the party should not protect its identity from the opposing party when the opposing party have a right to investigate the merits of the case. Without knowing who "Plaintiff John Doe" was in the alleged defamatory statements and claims, Defendants were left to use deductive reasoning and private investigating to identity Plaintiff's wife and thereby, finding Plaintiff's identity. Code of Civil Procedure section 367 states that "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." It was necessary to narrow down who Plaintiff was for proper investigation. Defendants have the constitutional right to confront their accusers in a court of law. A large part of confronting an accuser is knowing exactly who the accusers are. Plaintiff intentionally hid his identity, not for personal security and protection of privacy, but for undue hardship and for financial gain.

In the claim, Attorney Buck included Defendant's private information such as school, workplace, future career goal, and other immaterial information without redaction. The phone numbers, as well as the account numbers to phone billing are some of the private and personal information that were submitted. Attorney filed the lawsuit without contacting Defendants to confirm their involvement in the alleged defamatory statements, without requesting redaction of the alleged defamatory claims and without factual basis for each of the claim. It has been identified that Plaintiff's personal twitter, "@redlawco" and Plaintiff made efforts to redact only his personal Twitter and his personal information. Plaintiff did not show regards for other parties to this matter, publicly exposing personal information of the Defendants. This further supports his motive behind the frivolous claim that was made to cause undue hardship and to harass.

Plaintiff deliberately requested more than $75,000 in damages to assert diversity jurisdiction when personal jurisdiction is improper; Plaintiff demonstrated abusive tactics in various ways: Plaintiff deliberately acted as a plaintiff "John Doe" and his own attorney by hiding the identity of the plaintiff of the matter in order to claim attorney's fees; Plaintiff did not cooperate with Defendants in discussing the lawsuit, causing financial hardship and emotional distress. Such conducts should be sanctioned, not condoned. Defendants therefore requests that the Motion be granted.

## CONCLUSION

WHEREFORE, Defendants respectfully requests that this Court dismisses all claims in this Court based on lack of personal jurisdiction under C.R.C.P. 12(b)(2), redact all of Defendants' sensitive information on file, such as phone numbers, home address, IP address, Sprint account numbers, and all other personal identifying numbers, and sanction attorney for the unethical conducts.

DATED this 12th day of December 2018.

Respectfully submitted,
By: /s/ BORA SONG
/s/ HYE SONG,
Pro se

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 12th day of December 2018, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS AND MOTION TO SANCTION** was served via process service to the following unless another method is specified below:

Matthew W. Buck
RED LAW
445 Broadway Suite 126
Denver, CO 80203
***Counsel for Plaintiff***

/s/ Jong Lee