IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

_____

Matthew Buck,                                             Civil Action: No 18-cv-02427

Plaintiff,

v.

**BORA SONG**,

And

**HYE SONG**

Defendants.

_____

---

Plaintiff's Response in Opposition to Defendants' Motions to Dismiss for Lack of
Personal Jurisdiction

---

## I.    **INTRODUCTION**

Over the course of a week in September 2018, Defendants Bora and Hye Song sent a string of messages over Twitter and email accusing Plaintiff Matthew Buck of harassing and possessing sexually-explicit images of a fictional sixteen-year-old child. The messages identified Plaintiff and his wife by their full names, referenced the city they live in, and were directed at accounts controlled by Plaintiff, his wife, and a co-worker of Plaintiff's wife.  Now, facing this suit, Defendants move to dismiss, arguing that that the Court cannot exercise personal jurisdiction over them because *most* of their messages were not sent *exclusively* to Plaintiff.  The remaining messages, however, which were sent either exclusively to Plaintiff or were directed at Colorado residents are sufficient to demonstrate intentional direction at this forum and bring Defendants within the Court's personal jurisdiction.

## II.    **FACTUAL AND PROCEDURAL BACKGROUND**

### A.  Parties

Plaintiff Matthew Buck is a citizen of Colorado and resides in Denver with his wife, Claire Buck, and two young daughters.  (TAC ¶¶ 2, 6, ECF No. 44); (Pl. Aff. ¶ 3, ECF No. 46-1); (Mot. Dismiss 1, ECF No. 45.)  Plaintiff is a Colorado-licensed attorney and practices law in Denver as the sole member of Red Law, LLC.  (Pl. Aff. ¶ 2, ECF No. 46-1); (Mot. Dismiss 2, ECF No. 45.)  Defendants Hye and Bora Song are citizens and residents of California.  (TAC ¶¶ 3-4, ECF No. 44); (Mot. Dismiss 1, ECF No. 45.)

### B.  Statements at Issue

On or about September 20, 2018, Defendants registered the Twitter user account @WilliamWilma2.  (TAC  ¶ 8,  ECF  No.  44.)   Later  that  day,  Defendants  used

2

@WilliamWilma2 to tweet "@clairibela your husband is absolutely disgusting. hide your children. your husband has a 60% chance of raping them too. halloween must suck for your family."   (Pl. Aff. Ex. A at 1, ECF No. 46-1 (errors in original).)  Defendants' original tweet from @WilliamWilma2 was directed at three Twitter users, including @RedLawCo and @clairibela.  (Id., ECF No. 46-1.)  The Twitter accounts @RedLawCo and @clairibela belong to Plaintiff and Mrs. Buck, respectively.  (Pl. Aff. ¶¶ 4-5, ECF No. 46-1.)  Like all of the tweets discussed below, this tweet was posted publicly and was accessible to all Twitter users.

Later that evening, Defendants used @WilliamWilma2 to tweet "his wife @clairibela doesnt give a fuck about the petulant disgusting asshole. she will realize after he fucks his daughter or @lonlystrbuxlovr kid."  (Pl. Aff. Ex. A at 2, ECF No. 46-1 (errors in original).)   Defendant's reply was again directed at three Twitter users, including Jessica Waselkow, a co-worker of Mrs. Buck who resides in Jefferson County, Colorado and uses the Twitter account @lonlystrbuxlovr.  (Pl. Aff. ¶¶ 6-7, ECF No. 46-1); (Mot. Dismiss 2, ECF No. 45).  Minutes later, Defendants replied to an unconnected tweet by Ms. Waselkow with the message "make sure your daughter stays away from Matt @redlawco he is a rapist and will rape your daughter, probably his own too."  (Pl. Aff. Ex. A at 3, ECF No. 46-1 (errors in original).)

The following day, Defendants began tweeting about their "daughter," stating

> Matthew Buck has now threatened my daughter and claimed he will use her pictures online. I have all the files. As a mother of 4 kids, this is up to me now. My daughters are all on #lawtwitter and I would like to be in the loop to see what the fuss is about.

(Pl. Aff. Ex. A at 4, ECF No. 46-1.)   Defendants continued to tweet about Plaintiff's harassment of their fictional daughter over the following days.  On September 22, 2018,

Defendants responded to another user by tweeting, "Thank you! Matthew Buck @redlawco has several reports filed at his local police in Denver." (Pl. Aff. Ex. A at 5, ECF No. 46-1.)  This message was directed at two Twitter users, including Plaintiff. (*See id.*, ECF No. 46-1.)

Defendants continued to tweet throughout the day, with one message stating, in part, "I am not sure why @redlawco and his wife blocked me. If you would like to formally apologize to me with your actual account, I would appreciate that too :)" (*Id.* Ex. A at 7, ECF No. 46-1.)  A half hour later, Defendants tweeted a similar message

> Matthew William Buck: if you are reading this, please stop sending DMs to my daughter. I still see it.
>
> Claire Adrienne Buck: I am so sorry for a husband like this. I hope you make better choices in the future for your children and for yourself. Good luck.

(*Id.* Ex. A at 8, ECF No. 46-1.)      Later that evening, Defendants sent Plaintiff an email through his firm website, stating

> Hello you piece of shit. You should fuck off of twitter. Ill make sure I keep sending your tweets out to people on my account. I dont give a fuck that you're private and people cant see you. Ill make sure that they do. You're a piece of fucking shit and your wife will get mails of your bullshit. Good luck raising your daughters. I know you're bored so Ill make sure to keep this drama fueled.

(TAC ¶ 14, ECF No. 44); (Pl. Aff. Ex. B, ECF No. 46-1 (errors in original).)  As if to emphasize this threat, minutes later Defendants tweeted

> I have tried numerous ways to contact Claire Buck @clairibela but she is unresponsive and indifferent about her husband's sexual harassment on my daughter. I am furious. I will make sure she understands the level of trauma this is on a parent. I can't believe she is a mother of 2

(Pl. Aff. Ex. A at 9, ECF No. 46-1 (errors in original).)

Following Defendants' flurry of tweets, @WilliamWilma2 stopped posting on September 25, 2018.

### C. Investigation

Because of the harmful nature of @WilliamWilma2's tweets that accused Plaintiff of sexually harassing a minor, Plaintiff filed this suit on September 24, 2018.  (Compl. ECF No. 1.)  Plaintiff initially brought suit against Jane Doe defendants with the intention of amending the complaint as soon as he discovered who was responsible.  (*Id.* ¶ 12, ECF No. 1.)

Plaintiff first issued a subpoena to Charter Communications, Inc. for subscriber information associated with the IP address used to send him an email through his firm website.  (TAC ¶ 16, ECF No. 44.)  Charter's subpoena response revealed that, at the time the email was sent to Plaintiff, the IP address was associated with an account registered to Hye Song.  (*Id.* ¶ 18, ECF No. 44); (Charter Resp. 2, ECF No. 46-2.)

Plaintiff next subpoenaed Twitter for information regarding the registration details and Internet Protocol ("IP") addresses which had logged into @WilliamWilma2, as well as for Bora Song's personal Twitter account, @irl_idgaf.  (TAC ¶ 19, ECF No. 44.)  Twitter's subpoena response showed that both @WilliamWilma2 and @irl_idgaf were both repeatedly accessed from the same IP address, which was associated with Hye Song's Charter account. (*Id.* ¶ 21, ECF No. 44); (Twitter Resp. 22-24 28-29, ECF No. 46-3.)  Twitter's subpoena response also indicated that 24. Twitter's subpoena response also showed that both @irl_idgaf and @WilliamWilma2 account was accessed by IP addresses associated with the State of California's internet system and terminated in the Los Angeles, California area.

Based upon this information, Plaintiff contacted the Los Angeles County Office of the Public Defender's Office ("LACOPD") to confirm that Bora Song was employed there at the times @WilliamWilma2 and @irl_idgaf by IP addresses associated with the State system.  In response, Jean Burke, the Law Clerk Coordinator for LACOPD, confirmed that Bora Song was employed with LACOPD during this period.  (*See* Pl. Aff. Ex. C, ECF No. 46-1.)

Plaintiff therefore amended his complaint on December 13, 2018, to identify Bora and Hye Song as defendants for claims of defamation *per se* and harassment under the Colorado State harassment statute, Colo. Rev. Stat. § 18–9–111.  (TAC, generally, ECF No. 44.)  On December 17, 2018, Defendants moved to dismiss for lack of personal jurisdiction arguing that (1) Plaintiff has not made a *prima facie* case that Defendants are responsible for the postings made on the @WilliamWilma2 account; (2) Defendants' messages do not demonstrate purposeful direction at Colorado residents; and (3) Defendants' due process rights would be violated by the Court's exercise of personal jurisdiction.  (Mot. Dismiss, generally, ECF No. 45.)  This response now follows.

## III.   LEGAL STANDARD

When a defendant brings a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bear the burden of establishing personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).  At the pleading stage, plaintiffs need only make a *prima facie* showing of personal jurisdiction.  *Id.* at 1070.  In determining whether plaintiffs have met this burden, the Court may consider both the pleadings and evidence, such as affidavits, offered by the parties.  *See id* at 1069–70.  In reviewing these materials, the court must take as true all

well-pled facts alleged in the complaint and resolve all factual disputes in the parties' affidavits in the plaintiff's favor.  *Id.* at 1070.

## IV.   ARGUMENT

Generally, there are two requirements which must be met for the Court to assert specific personal jurisdiction[1] over a citizen of another state: "first, that the exercise of jurisdiction is sanctioned by the [forum] state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment."  *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011).  However, Colorado's long-arm statute is coterminous with federal constitutional limits.  *Dudnikov*, 514 F.3d at 1070.  As a result, the Court's analysis is limited to due process.   *Id.*

The due process analysis has two components.  First, "the defendants must have minimum contacts with the forum state, demonstrating that he purposefully availed himself of the protections or benefits of the state's laws and should reasonably anticipate being haled into court there."  *DiPanfilo*, 671 F.3d at 1166 (cleaned up).   Where the defendants' contacts come in the context of communications and activities on the internet, the Tenth Circuit has "adapt[ed] the analysis of personal jurisdiction [by] placing emphasis on the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible from there."  *Shrader v. Biddinger,* 633 F.3d 1235, 1240 (10th Cir. 2011).  With respect to email in particular, "the apt analogues may be phone calls, faxes, and letters made or sent by out-of-state defendants to forum residents," which "have been found sufficient to support

---

[1]  Plaintiff concedes that Defendants are not subject to general personal jurisdiction.

specific personal jurisdiction when they directly give rise to the cause of action." *Id.* at 1247. However, because "email addresses typically do not reveal anything about the geographic location of the addressee[,] . . . if the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email itself does not demonstrate purposeful direction of the message to the forum state." *Id.* at 1247–48.

Second, the Court must ensure "that the exercise of jurisdiction over him does not offend traditional notions of fair play and substantial justice." *DiPanfilo*, 671 F.3d at 1167 (cleaned up). To this end, the Court should consider the following factors:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

*Id.*

## A.   Plaintiff has established a *prima facie* case that Defendants are responsible for the offending messages.

Defendants first argue that the Court should not base its analysis on the offending messages because they assert Plaintiff has not presented *prima facie* evidence that they are responsible for the messages. (Mot. Dismiss 6, ECF No. 45.) In support, Defendants make an unsworn statement that they are not responsible for these messages. (*See id.*, ECF No. 45.)

As laid out above, Plaintiff has presented evidence showing that: (1) messages sent by @WilliamWilma2 were sent with a Charter IP address associated with Defendants' home internet account; (2) the Charter IP address associated with @WilliamWilma2 was also used to access Bora Song's personal Twitter account, @irl_idgaf; (3) the same Charter IP address was used to send the harassing email to

Plaintiff; and (4) an IP address associated with the State of California logged into @WilliamWilma2 during the same period Bora Song was employed by LACOPD.  This is more than adequate to establish a *prima facie* case that Defendants are responsible for the offending messages.  Moreover, Defendants cannot prevent this showing by merely alleging that they are not responsible for these messages, as the court must resolve all factual disputes in Plaintiff's favor.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).  As a result, the Court may base its personal jurisdiction analysis on the messages in question.

**B.    Defendants have established minimum contacts with Colorado by purposefully directing their communications at Colorado residents.**

Defendants have established minimum contacts with Colorado because they expressly aimed their messages at Colorado residents and intended for their effects to be felt in Colorado.  This is evident in how Defendants targeted Plaintiff, Mrs. Buck, and Ms. Waselkow in their email and messages over Twitter.  In each case, Defendants actively targeted and manually entered information which would assure that a Colorado resident would directly receive their messages.

This is most obvious with Defendants' email to Plaintiff, as Defendants sent their email through Plaintiff's website, http://red.law. As Plaintiff's website makes clear, Plaintiff is the sole attorney in his firm and practices in Colorado.  *See* Red Law, LLC (last accessed Jan. 7, 2019), http://red.law.  Thus, Defendants' choice to send an email to Plaintiff through the website demonstrates that they were aware that their messages would be read by someone in Colorado.  Taken in conjunction with the message's references to Defendants' harassment of Plaintiff on Twitter, Defendants not only

intended for their message to be read by Colorado residents, but that they actively targeted their messages at a specific Colorado resident.

Similarly, Defendants' tweets to Plaintiff, Mrs. Buck, and Ms. Waselkow demonstrate that Defendants actively targeted Colorado residents.    Specifically, Defendants took advantage of Twitter's notification system in two ways to assure that their targets would be notified of their messages.  First, Defendants manually entered the usernames of Plaintiff, Mrs. Buck, and Ms. Waselkow in their messages, rather than using only their real names.  (*See*, *e.g.*, Pl. Aff. Ex. A at 9, ECF No. 46-1.)  By including the targets' username in the message, Defendants utilized Twitter's notification system to assure that the target would be made aware of the message.  *See* "Mentions and Replies" Twitter (last accessed: Dec. 31, 2018), https://help.twitter.com/en/using-twitter/mentions-and-replies. In other cases, Defendants actively entered separate threads by third-parties for the *purpose* of directing their messages at Plaintiffs, Mrs. Buck, and Ms. Waselkow. For example, Defendants replied to an unrelated thread created by Ms. Waselkow to allege that Plaintiff had or would rape her daughter.  (*See* Pl. Aff. Ex. A at 3, ECF No. 46-1.)  As multiple courts across this country have found, such targeting of specific Twitter users is sufficient to establish purposeful direction in the minimum contacts analysis *See*, *e.g.*, *Boddy v. Pourciau*, No. C-18-1046JLR, 2018 U.S. Dist. LEXIS 166699, at *10 (W.D. Wash. Sep. 27, 2018).

In each of these cases, not only were Defendants aware that their messages were targeted at Colorado residents, but they intended for the damage to be felt in Colorado. Specifically, it is clear that Defendants were aware that Plaintiff resided in Denver, Colorado and was married to Mrs. Buck because they directly said as much.  (*See* Pl. Aff.

Ex. A at 5, 7, ECF No. 46-1.)  Additionally, Defendants' targeting of Mrs. Buck and Ms. Waselkow demonstrates that Defendants intended for their messages to cause damage in Plaintiff's home and community.  Defendants' false assertion that they filed police reports regarding Plaintiff with the Denver police again demonstrates this intentional conduct.  Put simply, if Defendants intended for their messages to have been made to the internet at large, they should not have explicitly and repeatedly targeted members of Plaintiff's household and local community.  As a result, Plaintiff has established sufficient minimum contacts for the Court to exercise personal jurisdiction.

**C.     Exercising Personal Jurisdiction Over Defendants Does Not Offend Traditional Notions of Fair Play and Substantial Justice.**

It is appropriate for the Court to exercise personal jurisdiction over this matter because the burden on Defendants in litigating this matter in this forum is substantially outweighed by the remaining factors.

**1.     Defendants have not identified any substantial burdens.**

The Court should afford little weight to the burden on Defendants in litigating this matter in Colorado simply because Defendants give the Court little to consider. Defendants argue that the burden on litigating this matter in Colorado justifies dismissal because (1) they reside in California; (2) do not conduct business in Colorado; and (3) believe that retaining a Colorado attorney would be more expensive and less beneficial than retaining a California attorney.  (Mot. Dismiss 8, ECF No. 45.)

Plaintiff readily concedes that Defendants reside in California and that their business in Colorado is limited to repeatedly libeling him on the internet.  However, Defendants' conduct in this suit should be considered, as Defendants have not happened into a Colorado court merely because they posted things on the internet, but because

they directed their messages at specific Colorado residents, including the family and friends of Plaintiff.  Further, the burden of retaining a Colorado attorney is neither as grave nor burdensome as Defendants represent.  Defendants are just as capable—if not more so, given Bora Song's educational background—as any other person in locating appropriate counsel.  Moreover, Plaintiff would respectfully assert that Defendants will find that the rates charged by Colorado attorneys are generally more favorable than what they will find in Los Angeles, without any sacrifice in the quality of representation. Additionally, the burden on Defendants in communicating with appropriate local counsel is significantly decreased by the availability of email, telephone, and video conferencing technology which is readily available to them through their computers and smartphones.

### 2.       Colorado has a substantial interest in resolving this dispute.

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1062 (10th Cir. 2008) (cleaned up).  "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws."  *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005).

Both factors apply in this case.  First, Plaintiff is obviously a forum resident seeking redress for injuries felt in Colorado and which were caused by California actors.  Second, Colorado has the most significant relationship to this conflict and, therefore, its law should apply in this matter.  Defendants targeted their harassment and libel not just at Plaintiff, but his wife and Ms. Waselkow, all of whom live in Colorado.  Therefore Colorado's

interest extends beyond protecting only the Plaintiff to protecting innocent third-parties from further harassment.

Defendants wholly ignore these issues and instead argue only that Colorado has no interest because its laws are less favorable to a defamation defendant than Defendants' home state.  (*See* Mot. Dismiss 8, ECF No. 45.)  The fact that Colorado has chosen not to adopt such favorable laws does not indicate that Colorado is a backwater that is unable to adjudicate such disputes.  To the contrary, Colorado has an interest in assuring that its laws may be appropriately enforced without threat of forum shopping.  As this Court is more than capable of adjudicating this matter, Colorado's interest in protecting its citizens should not be diminished out of fear of ignorance.

### 3.    Plaintiff's Interest in Convenient and Effective Relief is Best Served in Colorado

When applying this factor, courts note that it "may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing [him] to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit."  *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1294 (10th Cir. 2007) (cleaned up).

As discussed above, Defendants hope for Plaintiff to be forced to refile in California *because* California's laws are significantly more favorable to them.   Specifically, Defendants reference California's Anti-SLAPP suit provisions, which would substantially increase the cost to Plaintiff in litigating this matter in California, as there would be significant additional motion practice while advancing no new substantive defenses for Defendants.  As Plaintiff is representing himself and does not intend to seek separate counsel—as Defendants apparently do—he will also have to close his practice on days

he is forced to travel to California to further adjudicate this matter.  As Defendant is a solo-practitioner, this would represent a significant burden on his ability to continue this matter.

### 4.   Colorado is the most efficient place to litigate this dispute.

"This factor asks whether the forum state is the most efficient place to litigate the dispute." *AST Sports Sci.*, 514 F.3d at 1062 (cleaned up).  "Key to this inquiry are the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *TH Agric. & Nutrition*, 488 F.3d at 1296 (cleaned up).

In this case, Plaintiff has thus far identified five likely witnesses:  Plaintiff, Defendants, Mrs. Buck, and Ms. Waselkow.  Of these witnesses, the non-parties reside within this division.  As Defendants have not identified any additional witnesses, Colorado is the most convenient venue for the witnesses.  Additionally, the substantive law of Colorado is likely to govern this case.  Colorado has adopted the most significant relationship test for defamation claims.  *See Zimmerman v. Bd. of Public. of Christian Reformed Church, Inc.*, 598 F. Supp. 1002, 1011 (D. Colo. 1984).  In defamation cases this is usually the state of the plaintiff's domicile.  *Id.* (citing *Hanley v. Tribune Publ'g Co.*, 527 F.2d 68 (9th Cir. 1975)).  Here, as in *Zimmerman*, Defendants' statements were "published" in another state, but they were directed at specific Colorado residents and the effects were most directly felt in Colorado.  Therefore, Colorado law applies in controlling this matter.

Defendants' response to this issue is simply that Colorado law should not apply turns entirely on the idea that Colorado law is not equipped to handle defamation claims,

especially if they occurred on the internet.  This is plainly incorrect.  Colorado has well-developed laws, including state constitutional protections, for defamation that are precise and clear.  *See*, *e.g.*, *Williams v. Dist. Court, Second Judicial Dist., City & Cty. of Denver*, 866 P.2d 908 (Colo. 1993).  Moreover, this Court is more than capable of properly addressing any nuances which may develop in this matter.  Therefore, Colorado is the most efficient place to litigate this dispute.

5.    **Colorado's interest in substantive social policies is best served by allowing this Court to interpret its law.**

"This factor "focuses on whether the exercise of personal jurisdiction . . . affects the substantive social policy interests of other states." *AST Sports Sci.*, 514 F.3d at 1062 (cleaned up).  In this case, Colorado has an interest in ensuring that a court which is familiar with its rich case law is responsible for its interpretation.  Additionally, as discussed above, Colorado has an interest in enforcing its laws as written and seeing that they are not effectively modified to comport with another state's laws.

## V.    <u>CONCLUSION</u>

Based on the foregoing, it is appropriate for the Court to exercise personal jurisdiction over the Defendants and, therefore, Defendants' motion should be denied.

Respectfully Submitted,
*/S Matthew W Buck*
RED LAW
445 Broadway Suite 126
Denver, CO 80203
720-771-4511
matt@red.law

15

**<u>CERTIFICATE OF SERVICE</u>**

I, Matthew W. Buck, hereby certify that on January 7, 2019, I served a copy of the

foregoing on the defendants via e-mail, and with the court via the court's ECF system.